I'm Kenneth Augerand along with Mr. LeMoyne and Mr. Burtz here today for the appellants. They are River Ventures and Xcel. And we are here today to talk about the insurance aspects of a contract that this court's already looked at once, a marine contract. And in that contract, you have a standard situation where you have UBT, the dock owner at the top, and it's got contractors underneath it. River Ventures is one of the contractors. Centaur is another one of the contractors. And the parties did what I always teach is the best way to do indemnity, and that is they had reciprocal indemnity that puts all of the responsibility for an employee on one party, all of its property, all of its people, it takes. And it takes those throughout the workplace. It's the fairest, easiest way to administer, and that's what happened in this case with Centaur. One fly in the ointment was the fact that the any indemnity provision of the Longshore Act barred the indemnity, so it all falls back on the insurance. And so we're going to talk about insurance principles today. We're going to talk about the fact that Centaur is required to provide additional insurance for River Ventures, UBT, their vessels, their insurers, the whole rest of the group on their P&I policy and their excess policy. I wanted to ask you about for a little maritime background on a P&I policy, protection and indemnity, and the special variance it might have in the context of maritime as opposed to other fields. You know, I teach marine insurance. No, I don't. And that is something that we spend weeks on, and it all goes back. It all goes back to the decision of the Supreme Court in Wilburn Boat, which your colleagues on the Third Circuit just asked for the Supreme Court to overturn that. But the insurer in that case didn't see certiorari. So what we have is we have a complicated, complicated set of rules that go back to your decision in the Albany case. And in that Albany case, some things are maritime and others are not, and that depends upon whether there is an established maritime rule. And so in this case, there is no established maritime rule. Louisiana rules are applicable. And Judge Barksdale, although we cited several Louisiana cases, those cases all go back through the great Louisiana Supreme Court to a decision that Judge Wisdom issued in 1990, which you were on the panel of that case, which gave us the predominant rules that we have in this case today. One of those rules is that you apply—you have to interpret a policy in conjunction with every word in that policy, which travelers does not. That's not my question. My question is, is there any special purpose for use of a P&I policy in this type of situation where you have the master contract? And what is the purpose of the P&I policy as opposed to some other policy? Absolutely. And the purpose of that is the fact that in the allocation of risk, you have a marine contract and you have risks that involve vessels. Vessels are not meant to be covered like the trooper, which is River Ventures' boat. It's not meant to be covered under a GL policy, which has a watercraft exclusion. It's the liability of the owner. In this particular case, the parties chose an insurance arrangement whereby you've got two different risks. One of them is the EL side, the employer's liability side. The other is the third party liability. The EL side is the party's intended. When you allocate all risk to Centaur for its employees, Centaur has EL coverage. That coverage is covered under an MEL policy, a maritime employer's liability policy. But the liability of the owner is meant to be—of a vessel like River Ventures—is meant to be covered under a P&I policy. So you need both of those coverages in this case. And the parties intended that there be P&I because it will cover River Ventures for its vessel, the trooper. P&I follows vessels. And so River Ventures is liable as the owner of the trooper. It's covered under the P&I policy because it's named as an additional insurer. Is that the purpose of your breach of contract action because you're claiming they didn't properly insure? That is the fallback to this. This case comes first. I understand that. That's what your breach of contract case is about. Yes, Your Honor, because the contract requires that Centaur obtain P&I insurance and name River Ventures, and that insurance has to have the equivalent of the SP-23, which does not exclude employees or the crew. And so our contention is that if the policy, the P&I policy, does not cover, then there was breach of contract against Centaur because they did not get coverage. It covered employees of Centaur in a claim against River Ventures. And they also were required to get—Centaur was also required by the contract to get excess or bumber shoot coverage for $10 million naming River Ventures. And that policy was required to have no sole negligence exclusion. So that would be another allegation of breach of contract if Traveler's interpretation is undertaken by this court, which takes us then to the two exclusions that Traveler cites. There are certainly multiple reasons why the employee exclusion does not apply in this case, and I'll go through those with you before we get to the excess policy. When you read the exclusion, the exclusion says any employee of the assured, regardless of whether they be employees of the assured or an additional insured. So let's take that language and let's substitute the parties in and see how it works. So it would be any employee, according to Traveler's, who says that the assured means Centaur. So it would say any employee of Centaur, regardless of whether it's an employee of Centaur or River Ventures. Well, that doesn't make sense. That just—you can't write a policy that way. That absolutely doesn't make any sense whatsoever. But the good news is we don't even have to just look at the fact that that interpretation doesn't make sense because the Louisiana courts have repeatedly ruled that when you use the word the insured, that that means the party that's making the claim. And that's exactly what River Ventures is arguing here. River Ventures says that the way that you would interpret this, using the language from the Louisiana Supreme Court, which I'll talk about in just a second because you can't do both at the same time, an employee of the insured making the claim, regardless of whether that's an employee of the named insured or an additional insured. And that makes perfect sense. To give meaning to this the way the Louisiana Supreme Court says it should be interpreted makes perfect sense under the circumstances. And as I'll talk about as soon as I talk about the Louisiana Supreme Court, that also follows the decision that also comports with the rest of the policy when it uses the term the insured. And so now when we look at what the Louisiana Supreme Court has said, the case we cite is the Osbon case. And the Osbon case dealt with the words the insured and said that that means that's the insured who is seeking to recover under the policy. So when it says the insured in the employee exclusion, it would be an employee of River Ventures. And Barrios was not an employee of River Ventures, so it doesn't apply. And this, of course, complies with the intent of the parties that Centaur's EL be covered on the EL side and River Ventures be covered under the P&I or UBT or River Ventures be covered under the P&I. Now, I would note that after the Osbon case was decided by the Louisiana Supreme Court, subsequently the Supreme Court has quoted and said about Osbon, we interpreted the insured to refer solely to the insured seeking to recover under the policy. That's what we're saying here. And, of course, the cases, the Louisiana cases that we cite that deal with employee exclusion say exactly that. There's a difference between the insured, which is the insured making the claim, and any insured, which includes additional insureds or anybody else. And so those cases are cited in the brief. But the next thing that you have to look at is it's not just Louisiana, but even the great guru, Alan Wynn, whose treatise is in our office and everybody's office who does insurance claims. The exclusion for employees of the insured does not apply to a claim against an entity that is not the employer. It's actually, this isn't something that's just Louisiana. This is the rule everywhere. And, of course, when you look at travelers' policy, that has to be the interpretation because they use it repeatedly, the insured, through the policy. And it's in the statutory workers' comp exclusion. It's in the law costs, the cross liabilities, the occupational disease exclusion, the pollution exclusion buyback. If it's true that the insured means anyone, if it means that it's the insured centaur only, then that means there's no pollution exclusion for river ventures. There's no statutory workers' comp exclusion for river ventures. There's no occupational disease exclusion for river ventures. And the law costs, the defense costs, would only apply to centaur and wouldn't apply to any additional insured. So you cannot interpret the policy that way. And even travelers have to recognize that because in their brief, when they talk about this section, they use an ellipsis in the middle of this for the language they don't like. They take out the language that makes this conflicting. And so the good thing is the only way to give effect under Louisiana law to the exclusion, as it's written to all the words in it under the requirement of insurance construction, to give effect to Louisiana law and the expectations of the parties, is to interpret it so that the insured, in this case, is river ventures. It was not their employee. And so the employee exclusion does not apply. In my last couple of minutes, I want to talk about the bumper sheet policy because that's the $10 million excess policy. And it is true that there is a wonderful exam question here. There is just a wonderful exam question. And we go back to Judge Brown, my mentor, to his great opinion in the spot pack case. We could go through that and talk about why the insuring agreement compared to the conditions for additional insurance reflect that river ventures and Excel were insured from the outset of this policy. That's a great question. But in my last minute, what I want to do is I want to note that you don't have to get there. You do not have to get to that question because what you can do is look just at the additional insurance and the two conditions to the additional insurance. Remember that the master service contract says $10 million insurance for Excel and river ventures and that there will not be a sole negligence exclusion. The conditions, number two, tab six of our record excerpts, page 72, says that the additional insured is added as necessary to meet the requirements of the contract. As necessary to meet the requirements of the contract conditions. The contract conditions say that there will be no employee exclusion. And so under Louisiana law, as applicable here, we cited on page 17 of our reply brief the Seals v. Morris case. You cannot, on the one hand, provide, excuse me, coverage cannot be provided by the right hand and then excluded by the left hand. In this case, All right, counsel, you've got a red light. Finish your sentence. Thank you, Your Honor. That's exactly what I was going to say. In this case, the coverage is given according to the conditions of the contract and then pulled back by the exclusion. All right, thank you. You've reserved your rebuttal time, so we'll hear you on your return. Thank you, Your Honors. All right, thank you. Let's hear from Travelers. Mr. Kelpie. May it please the Court, Kent Kelpie for Travelers Property Casualty Company of America. I'd like to just point out from the get-go that the master service contract that XL and River Ventures refer to doesn't mention and has nothing to do with River Ventures. River Ventures is not a party to that contract. They had no involvement with that contract. They didn't sign the contract. They didn't sign a similar contract. XL wasn't involved in the contract, nor was Travelers. No one before the Court at this time was a party to the master service contract. It's a very separate document. It has no bearing on the insurance policy, and it shouldn't have any bearing on the policy. The parties to the MSC were Centaur and UBT, the owner of the facility. What they intended and what they wanted to do is not before the Court. That matters before the district court, and it's been stated in these proceedings. It's important because Louisiana does apply in this case. Louisiana law does apply in this case, and it's important for the Court. This Court has recognized. In fact, Judge Stewart, Judge Barksdale, you were both on an opinion, cash versus liberty insurance, that recognized that the role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract because their intent, as reflected by the words of the policy, determine the extent of coverage. It's very important because what that means is the insurance policy between the two parties, the party making the claim, the party who issued the policy is the law between those parties. It's not some third party or third—I shouldn't say third party— but it's not some separate, distinct, unknown contract like the master service contract. That might be an academic concept, but it doesn't apply to the parties to the insurance policy. So we must look at the insurance policies, and that's what's important here. What XL and what RiverVentures asked this Court to do is interpret or provide additional coverage to RiverVentures and XL pursuant to two policies contrary to the language of the policies and without legal authority. The subject exclusion, the crew and employee exclusion at issue, doesn't just talk about employees. It excludes coverage for crew members, seamen, and employees of the assured, regardless of whether they're the assured or the additional assured. Regardless of the assured, regardless of whether they're the employees of the assured or the additional assured, synonym for regardless of whether is whether or not. And so the point there is, what is the purpose, or how does all—because these master service contracts and all the policies issued under them, et cetera, a very specialized field, as counsel knows far better than I, the question I ask counsel for RiverVentures, what is the purpose of the P&I in the context of maritime law and it's to serve—has a vessel connection. So why would this exclusion be in here? Give us some maritime background on that. Right, so as counsel correctly pointed out, the P&I policy is a very specialized, limited policy. It provides named risk coverages to vessel owners and operators for certain liabilities arising out of the operation of the vessel. It's not an all-risk policy like a general liability policy like you might have on your property at home or at a business. It's very tailored. It's been around—the SP-23 form, which is the one that's at issue here, has been around since 1956, so it's almost 70 years old, 65, 70 years old. It's been well established. It's used regularly in the industry. What the SP-23 form covers is loss of life, bodily injury to individuals, that's one thing, collisions, certain collision liabilities, damage to docks, piers, things of that nature, deviation claims, a wide variety. We could look at the policy and you'll see that each one of them are enumerated, separated out. What happens in these situations where you have— so let me give you an example so you maybe put things into context, right? You have—it's not uncommon to have a vessel that's owned by one entity, operated by another entity. For ocean-going vessels, you may have a managing agent who hires the crew and the officers of the vessel as another entity. And one or more of those entities—well, one entity will insure the vessel, and often name the other entities, which may be related, may be cut by contract or otherwise, as additional insurance. Under those circumstances, the purpose of this exclusion is, let's take all of the people that are working on the vessel, regardless of whether it be for an additional insurer or an insured, but who are involved in the vessel's operations, remove them from this particular policy. It might also be that you would have this exclusion if you had like a dumb barge, right? Where there isn't a crew. You don't want to pay for that insurance. And the way that's handled when that occurs, when that type of coverage is written out of the policy, the way that's handled is there are two separate ways to deal with individuals that may be on the vessel, and you want to get them covered, right? For your individual employee, you obtain what's called a MEL policy, a Maritime Employer's Liability Policy. That was obtained here. The other way to do it, and an additional way to do it, and to get people that would fall outside the cracks of the employment relationship, is to have the watercraft exclusion deleted from your general liability policy. And that was contemplated in the Master Service Contract, as it was originally drafted. UBT and Centaur agreed not to have the watercraft exclusion deleted. So the way that coverage is provided under those circumstances is through different policies, because the insured doesn't want to pay for duplicate coverage. So if you interpret this exclusion the way that XL and River Ventures would like, where you have multiple people working on the vessel, multiple employers of multiple different groups of people on a vessel, what you end up with is those insured individuals now may have multiple types of coverage with duplicative coverage, because they'd have to go out. If we don't know who on the vessel may be covered under what policy, because we don't know who they're employed by or who there might be a statutory or barred employee by, by any particular circumstance or time, now you have multiple insurances out there that the insured doesn't necessarily know which one's going to be responding to. So this endorsement is meant to ride out, to take the entirety of those people off of the vessel, out of the scope of coverage. And it makes sense, and it fits within what's typically a marine package, which is an MGL policy, an MEL policy, and a P&I policy, and a hull policy, but that's not an issue here. And that's the purpose here. The cases that XL and River Ventures cite don't apply to P&I policies. They don't apply to this situation at all. They're general liability policies. And unlike a P&I policy, they're all risk policies. So they cover everything unless it's excluded. And even more important than that, the exclusion that XL and River Ventures tries to graft into this exclusion is an employer's liability exclusion. And those are ubiquitous in general liability policies. And what that exclusion says is bodily injury, let me make sure I get this right, bodily injury to an, what is excluded is bodily injury to an employee of the assured arising out of and in course of the employment by the insured. That exclusion necessarily ties the employment relationship to the exclusion. That qualifying language, that limiting language is not present in the exclusion that is present in the traveler's policy. And the reason being is the idea of the policy, the purpose of the exclusion is to remove that coverage, that peril from the list of perils covered under the policy. And the court, the district court, sorry. You've been very helpful in your answer, but it triggers to me that, of course, when we're looking at an insurance policy, we look within the four corners just like we do any contract. And that then brings to me the question, well, is this something that should be a genuine dispute of material fact and should be tried? Well, there is no – well, let me suggest this. There is no material fact because we know who the employee is that was injured. He was an employee of Centaur. And the contract at issue here, the contract that governs this relationship is the insurance policy, not the MSE, not the Master Service Contract. I understand that. Sorry, maybe I misunderstood your question. No, no. Keep going. Okay. I'm saying why isn't this a genuine dispute of material fact? Well, the facts are not in dispute, Your Honor. Well, this – referring to employee of the assured, regardless of whether they be employees of the assured or any additional insured, you know, it's arguable, that's ambiguous, and then it would be a genuine dispute of material fact. Well, I would suggest to you, Your Honor, that – well, if this is a crew member, a seaman, or an employee of any assured, whether it be an additional assured or the named assured, it's excluded. Okay. Well, maybe it would have helped if it had just said an employee, regardless of whether they be employees of the assured or any additional assured, rather than having this language, other employee of the assured, regardless of whether they are an employee of the additional insured. Well, let me point out this. The exclusion does not just apply to assureds – I mean, of employees. I'm sorry. I know it applies to seaman. And crew also. All employees. Maybe not. That's the point. Well, it says crew, seaman, or other employee. And what I'm saying, Your Honor, is it's not necessary that the crew or the seaman necessarily be an employee of any particular one assured. They could be employed by any number of assureds. Let me ask you, as I understand it, and as I read it, River Ventures and Excel, the cases they cite, and the counsel opposite is citing this to this treatise and all the rest of these cases, but at least when I read it in preparation for this, those did not seem to be on point with the way these exclusions are. Or said differently, those seem to be dealing with different kinds of exclusions. Am I on target or not? And the counsel goes big to tell us about the treatise and all of that. But my question is whether those, no matter how articulately stated, actually amplify the kind of the wording of the exclusions here, even if arguing it's not as clear as maybe it could be. But I guess the point being, if your argument is A, in response to Judge Barstow, that there's no fact issues, then we're in the land of interpreting the policy, then my question is, as I read what they cite, those deal with differently worded kinds of exclusions and don't seem to amplify how we interpret these. Is that the take on that you have or am I missing it all? I agree. The cases cited by Excel and River Ventures deal with a very different type of policy. The exclusion has a very different language. It is completely worded differently. Like I said earlier, it's a general liability policy that has an all risk coverage. This is a different type of policy, an imperil policy. And so those cases are not on point. They're not relevant, I think, to this particular issue. Judge Engelhardt, who now sits on the Fifth Circuit, addressed both a CGL policy and a P&I policy in the Cleese decision, which we cite. And he separates out those two types of policies and makes an analysis of each. And to our point today, as Judge Engelhardt found in the Cleese decision, you can have multiple insureds. And in that case, the exclusion was similar but not the same. And Judge Engelhardt correctly held, in my opinion, that it didn't really matter who the employer of the injured party was. All employees of the insureds were excluded. And that is the way we're arguing today that this should be interpreted, and that's the way Judge Malazzo and Judge Engelhardt found. One other case, there's only three cases, all district court cases, all out of this district that address accrued exclusion. That's the Cleese decision, Judge Afric's federal decision, and, of course, the case we're here for today. There are, we have looked, and there are no other cases out there that we've been able to find that address this either in state court or otherwise. Let's see, I'm running out of time. We've got about five more minutes. Let me turn to the bumbershoot policy and some statements or comments that were made about it. The bumbershoot policy, contrary to what has been argued, the bumbershoot policy provides coverage to an additional insured only by virtue of the additional insured clause in the general conditions provision of the policy. Coverage is not provided to an additional insured by virtue of the general insuring agreement, which is argued in the brief. The insuring language for an additional insured is limited. It's not an exclusion, but it's limited, and it's limited to the excess of underlying coverages, and in this case, because the court found that the P&I policy did not provide coverage, there was no primary coverage to follow, so therefore the bumbershoot or excess policy did not apply. The other issue that would apply here is the sole fault provision, and the sole fault provision, River Ventures was found to be solely at fault at this. That's not a disputed issue, and courts have cited two separate decisions, the Carrier decision and the Schaefer decision, both state court decisions. Although there was factual questions there, both courts found that sole fault provisions in a policy of this nature are enforceable and clear. One thing I'd like to point out, once again, in an effort to avoid the application of the sole fault provision in the excess policy, XL and River Ventures suggest you should look at the MSC. I would point out to the court that Centaur provided UBT with a certificate of insurance in conjunction with this work. That certificate of insurance, it's at record document 2645, I believe, says specifically that sole fault provision is in that bumbershoot policy, so arguably they've accepted the modification of the MSC, even though I don't believe the MSC should apply here. Lastly, and this is the first time I've dealt with this, XL, as the insurer of River Ventures, has made a claim as an additional insurer under this policy. I'd like to point out that XL, and I'd like to point out from the beginning here, River Ventures cannot stand before the court today and say, we were expecting something else. We were a party to a contract and contracted for something we didn't get. We bought insurance from travelers and we didn't get it. None of that happened. That didn't occur. They didn't even find out about the master service contract until months after they had been sued, which was quite a time after the accident happened, and even longer after the policy had been issued or the MSC had been executed. But XL is an insurer, like travelers, for River Ventures. They entered in a contract of insurance, sold a policy of insurance, obtained a premium, and had a contractual obligation to cover the liabilities and costs or expenses of River Ventures in this suit. River Ventures was found to be solely at fault, and they paid what they were contractually paid to do under their policy of insurance. P&I policy provides coverage to an insured as owner, the knock-in case, we cite that, you'll see that in our brief, as owner of a scheduled vessel or an insured vessel. XL's liability did not rise out of its ownership or operation of a vessel. It arose as a contractual obligation of issuing a policy of insurance, which is a business that they're subject to. And so as a result of that, they don't fall within coverage in the first instance. And I'll bring one last issue up. There's no cases, by the way, that stand for that proposition. In fact, there's no cases to stand for many of the propositions or arguments raised. With respect to the barbershop policy, the P&I policy's arguments about tying the employment to the person making the claim, as well as the insurance, XL's attempt to recover under the policy as an insurer. I would also point out that they suggest that by virtue of some subrogation right, they're entitled to proceed against travelers for their contractual obligations to RiverVentures. I would argue that if XL and travelers are both found to be insurers of RiverVentures, that's a coinsurance issue and it's handled in a different fashion than through subrogation. And they cite no cases to support that subrogation is the appropriate method in this case. I'm out of time. Thank you very much. All right. Thank you, Mr. Chairman. All right. Back to you, counsel, for rebuttal. We'd like to make a couple comments about the colloquy we had earlier, Judge Marksdale, because of what was said in the reply here. And that is that when we talk about what the contract requires, the underlying MSC, there are different risks when you allocate everything to the employer. You have to make sure, insurance-wise, that there's employer's liability. And you have to make sure that there is liability for the third-party claims. The P&I covers that liability of third-party claims. So UBT sued as a third-party. RiverVentures sued as a third-party. They all come under the P&I, and that's why there has to be P&I coverage for this. This arrangement took out the fact that a normal SP-23 contains EL for Centaur. The normal SP-23 contains that. This arrangement took that out because Centaur agreed to provide its EL in an MEL policy. And that's what the contract provided, and that's what they got. So you talk about you don't want double insurance. There's only one thing where there's double insurance, and that is Centaur's employees against Centaur. That's why, and you certainly don't want RiverVentures to be covered for its EL because RiverVentures has, under the UBT, RiverVentures has its own contract. RiverVentures has to pick up its employees in that contract. They're certainly not going to come across over here. That is why the language was chosen, the exclusion, to exclude Centaur's employees but not— excuse me, so that Centaur's EL is not covered and RiverVentures' EL is not covered, but RiverVentures' GL is covered, and that's why this policy is written that way. That's the only way that they could make it work, and they did. And the language that they chose made that work. And you're right, Judge Stewart. The case law, there is no case on point with this. We have to pick up bits and pieces from the Louisiana courts. You are absolutely right about that. We think that when the Supreme Court says, the insured means when you've got multiple insureds, the insured means the one making a claim. We think that underwriters understand that when the insured is used, and they chose that. So that's our argument here. The cases they cite, the only cases they cite, the district court unreported cases, are cases in which the language said the insured. But the claims that were made in those cases, for example, in the Clash case, the complaints made a claim against all three insureds as an employee. So, yes, it was the employee making the claim. I mean the insured making the claim. It was its employee. Of course the exclusion applied. And the same was true in the decision by Judge Affleck. It was an employee of the insured. So under any reading of this clause, Judge Englehart's decision is clearly correct, although Judge Englehart also noted the distinction between any and the later on in that opinion and had a lengthy discussion noting the difference between the insured and any insured. So when you talk about, Judge Marksdale, whether there's a fact question or not, the key point here that avoids that is the fact that when you read this exclusion, if you believe there is a reasonable interpretation of it in favor of the insured, giving effect to all of the language in the policy, and when you read the entire policy, the insured can only be given effect if it means the insured making the claim. Otherwise, half the provisions in the policy fall out and don't work. So if you have one reasonable interpretation, then that has to be given effect. And finally, just one last statement, the subrogation aspect, that is the great Judge Brown decision in Lanasse that all of you have had to deal with, whether or not Excel is liable as owner or not, is a tremendous issue, but you don't have to get to that because Excel is expressly given the right under Section 1829 of the Civil Code, under its policy, and under Louisiana law, having paid the claim, to bring the claim as the creditor. All right. Thank you, sir. Thank you very much, Your Honors. Thank you, counsel, both sides, for your ample briefing and argument to us. We'll sort it out as best we can and let you know. All right. You may be excused.